FILED

98 OCT 13 PM 3:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT 13 1998

UNITED STATES DISTRICT COURT
NORTHERN DIVISION OF ALABAMA
MIDDLE DIVISION

FLORENCE FOSTER,              )
                              )
    Plaintiff,                )
                              )
v.                            )    CV-97-AR-3318-M
                              )
RENFRO CORPORATION,           )
                              )
    Defendant.                )

### MEMORANDUM OPINION

The court has before it a motion for summary judgment filed by defendant Renfro Corporation ("Renfro"). For the reasons set out in this opinion, the court finds that genuine issues of material fact exist with regard to the retaliation claim brought by plaintiff, Florence Foster ("Foster"). Summary judgment is therefore inappropriate, and defendant's motion is due to be denied.

### Pertinent Undisputed Facts

Before the events leading to this lawsuit, Ms. Foster was an employee at Renfro's Fort Payne, Alabama sock manufacturing facility for approximately twenty years, first as a "knitter" and later as a quality inspector. In 1994, Foster brought a charge of racial discrimination with the EEOC against the DeKalb Knitting Company ("DeKalb"), which owned the Fort Payne facility until Renfro purchased it in November, 1996. In her EEOC complaint Foster alleged that DeKalb had discriminatorily denied her a promotion, on

the basis of race and age, to a newly created job known as an "overall roving inspector," a position which Foster claims developed from her suggestion to DeKalb management. Even though the new position paid no more than Foster's old position while requiring much more walking, Foster nonetheless considered it a quasi-promotion. When the new job was offered to a white woman with less seniority, Foster concluded that DeKalb had acted with discriminatory motives. After the EEOC issued a Notice of Right to Sue, Foster brought a complaint in this very court. In that action, Foster admitted she had no reason to allege discrimination other than DeKalb's hiring decision on that single occasion. In fact, she testified in her deposition that no DeKalb employee had ever said or done anything to suggest discriminatory motives. *Foster v. DeKalb Knitting Co.*, CV-95-AR-2003-M ("*Foster v. DeKalb*"), Pl.'s Depo. pp 74-84. Upon DeKalb's motion, summary judgment was entered against Foster with strong warnings to the effect that her claims bordered upon the frivolous.[1] Foster appealed to the Eleventh Circuit, which dismissed her appeal in an order of August 20, 1997.

On or around March 6, 1997, Foster worked her normal shift at Renfro's Fort Payne facility. Because she had made an appointment to visit a beauty parlor that afternoon, she desired to leave a few

---

[1] In this court's memorandum opinion of October 4, 1996, it said "Even if this plaintiff was upset at not being chosen to do an assignment that she suggested to her manager, the courts are not the proper forum for airing such slights. Plaintiff comes awfully close to a violation of Rule 11, if it does not constitute one." *Foster v. DeKalb*, Memorandum Opinion of Oct. 4, 1996, at pp. 7-8.

minutes before her shift ended at 3:00 p.m. She informed her friend and co-worker, Eloise Veal, that she intended to leave early, and she asked Ms. Veal to remind their mutual friend and co-worker, Betty Barkley, to punch Foster's timecard at 3:00 p.m., as though Foster had stayed to the end of the shift. Another worker, Mr. Dale Stansell, overheard the exchange between Foster and Veal, and he informed Ms. Veal's supervisor, Jerral Ingle, about their plans.

After ascertaining that Foster had in fact left the premises, Mr. Ingle paged Foster's supervisor, Joyce Rowe, and then he retrieved Foster's timecard. When Ms. Barkley went to the time clock at the end of her shift, Mr. Ingle witnessed her searching for Foster's timecard. He confronted her and she confessed to the card-punching scheme. Ms. Rowe recalls that the page occurred at 2:45 p.m., pointing to the conclusion that Foster had left by that time. Foster disputes Rowe's recollection, steadfastly asserting that she did not leave more than 5 minutes before 3:00 p.m.

On or about March 7, 1997, Foster met with her supervisor, Ms. Rowe, and the personnel manager, Brett Sams, and she admitted the facts described above. Ms. Rowe and Mr. Sams informed plaintiff that she was being discharged for a violation of Rule 37 of the "Company Guidelines" ("Rule 37"), which prohibits falsification of company time records or production records.[2] For their part in the

---

[2] Renfro's published "Company Guidelines" provide that "Infractions of the following rules will normally result in discharge for the first offense:
  [...]
  37. Falsification of company records or documents, including the falsification of production or time records."
See Pl.'s Depo., Exh. 3.

matter, Ms. Veal received a written warning, and Ms. Barkley was suspended for three days.

On March 26, 1997, Foster filed a second charge with the EEOC, this time alleging that her discharge was in retaliation for bringing the first lawsuit against DeKalb.[3] After receipt of a Notice of Right to Sue from the EEOC, plaintiff instituted the present action, in which she re-alleges the retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and 42 U.S.C. §§ 1981-1981A.[4]

## Analysis

Viewing the evidence on record in the light most favorable to Foster, the non-movant, the court finds that she successfully makes out a prima facie case of retaliation for Rule 56 purposes. She has presented evidence which, if credited, sufficiently establishes that she was engaged in protected activity, that she was subjected to adverse job action, and that similarly situated employees were not disciplined in like manner.

Foster was engaged in protected activity by bringing a lawsuit to protect her federal right to be free from race discrimination in the workplace. Although Renfro argues that Foster's first lawsuit

---

[3] At the time this second EEOC charge was brought, Foster's first lawsuit had already been dismissed upon summary judgment, and Foster had filed an appeal in late October, 1996.

[4] Foster's complaint originally included a claim of race discrimination. However, by letter dated February 13, 1998, Foster informed the Court that she intended to abandon that claim, limiting the action to a claim of retaliatory discharge.

was not a protected activity because it was later determined to be frivolous, a closer reading of this court's memorandum opinion, which accompanied entry of summary judgment in that case, reveals that the court stopped short of finding that lawsuit frivolous. If Renfro was emboldened to fire Foster because of this court's strongly worded opinion in that case, it made a potentially costly miscalculation.

Foster's similarly-situated co-workers were not disciplined so severely as she, if at all. In the present case, a similarly situated employee would be one who had falsified company time records by leaving work without clocking out. If such employees exist, and if they were punished less severely, if at all, an inference would be created that the single feature distinguishing Foster from them - her initial lawsuit - was responsible for her firing. Foster has alleged numerous incidents whereby Renfro employees violated company policy regarding the time clock, but those employees were either not disciplined at all or only mildly reprimanded. Thus, a jury might infer that Foster was fired in retaliation.

Renfro has rebutted Foster's *prima facie* case by presenting evidence that she was fired for a legitimate, non-retaliatory reason, namely that she violated Rule 37. Based on the evidence in the record, however, the court finds that a reasonable jury could conclude that Renfro's stated reason for firing Foster is merely pretext for its retaliatory motive. No employee before Foster had ever been fired for a violation of Renfro's Rule 37. Until Foster's

rule-breaking was discovered, Renfro supervisors had never cared enough about enforcing Renfro's Rule 37 to investigate whether other employees, like Dale Stansell, had engaged in even more blatant and costly infractions, as Foster alleges. A reasonable jury might conclude that Renfro was only interested in enforcing Rule 37 against Foster, and, as already mentioned, the only thing which distinguished Foster from other alleged rule-breakers was the fact that she had sued Renfro. If a jury were to "connect the dots" and find Renfro's purported reason for firing Foster to be pretextual, Foster would prevail.

For these reasons, summary judgment is inappropriate. A separate and appropriate order will be entered.

DONE this 13th day of October, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE